AMY ET AL. *v.* AMY ET AL.

APPEAL from the District Court of Guayama.

No. 287.—Decided June 18, 1909.

VALIDITY OF CONTRACTS—FALSE CONSIDERATION AND ACTUAL CONSIDERATION.—
The mere fact of the expression of an inaccurate and false consideration made by the parties upon the execution of the contract, does not invalidate the same, whenever it appears to have been based in another which, although different from the one expressed, may be actual and lawful; for in such case the lack of consideration being only apparent, the obligations contracted by the interested parties with full knowledge may be valid.

ACTION TO RECOVER—CONJUGAL PROPERTY—LIQUIDATION OF CONJUGAL PARTNERSHIP—TITLE IN FAVOR OF DEFENDANT.—To recover alleged conjugal property found in possession of a defendant by virtue of a recorded title, it is not

enough to cancel said title, but the liquidation of the conjugal partnership is a necessary requirement, as also the corresponding adjudication of said property to the plaintiffs as payment of their shares.

ID.—ESSENTIAL ELEMENTS OF THE ACTION.—The action for recovery can only be prosecuted by the owner as an effective means to recover the thing which lawfully belongs to him when the following requisites are present: That the claimant, and no other, be the legitimate owner of the thing sought to be recovered (dominion right); that the thing claimed, and no other, be the one belonging to him (identity of the thing); and that said thing be unduly found in possession of the defendant (possession of the thing).

ID.—TITLE RECORDED IN FAVOR OF·DEFENDANT—NULLITY OF TITLE.—If the defendant in an action to recover shows a recorded title which protects him in the possession of the thing claimed, it is necessary to aver, prove and declare that said title and record suffer from a vice of nullity; and until such nullity is declared by a final order, it will be legally impossible to declare or admit the rights of the plaintiffs to the same thing. It is not decided whether the action to recover and that of nullity can be prosecuted in the same suit.

ACTION TO RECOVER—ACTION TO RECOGNIZE A LEGAL AND TACIT MORTGAGE.—The action to recover and that for the recognition of a legal and tacit mortgage on the preperty sought to be recovered, are incompatible in the same suit.

PARAPHERNAL PROPERTY—LEGAL MORTGAGE.—According to Law 17, title 11, *partida* ,four, ''the property which a married woman acquires by inheritance and all those whose *dotal* character does not appear, necessarily enter into the kind of extra *dotal* or paraphernal property.''

ID.—MATERNAL INHERITANCE.—According to Law 17, title 11, *partida* four, the paraphernal property has the same privilege as the dowry, because in the same manner as all the properties belonging to the husband are bound to the wife, if the husband sells or wastes the dowry, so also are they bound with respect to the paraphernal property.

ID.—LIABILITY OF THE HUSBAND—OWNERSHIP OF PARAPHERNAL PROPERTY—THEIR ADMINISTRATION.—The ownership and administration of the paraphernal property belong to the wife, and only as an exception are they transferred to the husband in administration, when in an express manner and authentic form the same are delivered to him by the wife.

ID.—LIABILITY OF THE HUSBAND—DELIVERY OF PARAPHERNAL PROPERTY—LAW APPLICABLE TO THE CASE.—The liability of the husband for the paraphernal property arises at the moment of the delivery thereof, according to the manner prescribed by the law; and it being fixed in the case at bar that the date of the delivery was the year 1874, the same should be governed by the laws in force at that time, which were the aforesaid ''*Leyes de Partida*'' and ''*Novísima Recopilación.*''

ID.—DELIVERY OF THE PARAPHERNAL PROPERTY TO THE HUSBAND—INSUFFICIENT PROOF—HUSBAND'S CONFESSION.—The confession of the husband of having received the paraphernal property is not sufficient proof of the delivery of the said property.

ID.—DELIVERY OF THE PARAPHERNAL PROPERTY TO THE HUSBAND—THE TESTIMONY OF WITNESSES INSUFFICIENT.—The statement of witnesses who only assert in a vague manner and in general terms that the defendant represented and administered the property belonging to his wife which had been delivered to him by virtue of an agreement made in the family, without specifying in

what said property consisted, or when, at what time, or in what manner the special delivery required by the law was made him, cannot be considered sufficient to establish such delivery.

ID.—HUSBAND'S LIABILITY—SALE OF THE PARAPHERNAL PROPERTY WITHOUT THE CONSENT OF THE HUSBAND.—In order that the property of the husband should become bound for the value of the paraphernal property by reason of the sale thereof, it is necessary that these should be sold with the consent of both husband and wife and that the proceeds should come into his possession. If it should not appear that the proceeds of the paraphernal property came into his possession, his property is not bound and, therefore, no legal mortgage arises.

THIRD PARTIES—KNOWLEDGE OF THE CONTRACT—ENTRIES IN BOOKS OF COMMERCE.—The fact that a defendant who invokes the character of a third party is a partner of a mercantile firm in whose books an account is kept with the succession of the owner of the property in litigation, is not sufficient, by itself, to justify the presumption that said partner had any personal knowledge of the entries therein, without some proof of the manner of keeping said books and of the active existence of such knowledge.

ID.—PERSONALITY OF A PARTNERSHIP—ENTRIES IN BOOKS OF COMMERCE.—The way an account is entered in the books of a mercantile firm is not conclusive of the existence of a particular person or society, as it might very well be that the account was opened in the manner it was, by mistake.

THIRD PARTIES—PROPERTY ACQUIRED WITH A KNOWLEDGE OF ENCUMBRANCES NOT RECORDED IN THE REGISTRY.—Although the meaning and spirit of section 34 of the Mortgage Law is not so absolute as to authorize us to consider as a third party the person who acquires a real property knowing the charges by which it is encumbered, although said charges do not appear in the registry, it is necessary that such knowledge should reveal itself by the personal acts of the party acquiring said real property or by facts the significance of which cannot be mistaken and which demonstrate his assent.

APPEAL—STATEMENT OF THE CASE—DOCUMENTARY PROOF.—The documentary proof must be inserted in the statement of the case, it not being sufficient for the purposes of the appeal that they be added to the record joined to the judgment roll.

The facts are stated in the opinion.

*Mr. Vías Ochoteco* for appellants.

*Mr. Texidor* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from the District Court of Guayama in which the facts and questions involved are well presented in the opinion of the court below of which the following is an extract:

"*Opinion.*—The plaintiffs, Josefina, Dolores y Enrique and Carmen Amy y Ramú, file their complaint before this court against their

legitimate father, Mr. Enrique Amy y Parreño, and Mr. Mateo Amorós, for the recovery of either certain heritable property or the recognition of a legal mortgage and nullity of a voluntary mortgage, averring as follows: 1. That Mr. Enrique Amy y Parreño, a resident of Guayama, and one of the defendants in this section, was married in the year 1875 to Mrs. Juana Carlota Ramú y Moret, of which union four children were born who are the plaintiffs in this action, the youngest of them living away from Porto Rico; (2) That upon contracting the marriage with the aforesaid Mr. Enrique Amy y Parreño, Miss Juana Carlota Ramú y Moret brought to the marriage as her paraphernal property, the sum of 22,160 *pesos* and 95 *centavos*, which amount had been left to her by her father, Mr. Juan Luis Ramú, who died in the year 1863, and said amount in the circulating medium of the date of the marriage the equivalent of different sorts of properties, and principally of a foundry and iron works in the town of Arroyo, which was delivered to the wife, and by her to her husband with the intention that he should have the control (*señorío*) of such properties during the marriage; said properties having been expressly received in this behalf by the husband who from that moment assumed an obligation in favor of his wife, of her heirs and assigns, securing the return of the aforesaid amount, by means of the general legal and tacit mortgage which was recognized by the law in force at that time in favor of wives upon the actual properties of their husbands and those which might be acquired thereafter by them, to secure the return of the paraphernal property; (3) That likewise in the year 1873 Mrs. Juana Carlota Ramú y Moret inherited from her mother, Mrs. María Dolores Cleofe Moret y Calendrau, the sum of 15,825 *pesos* and 64 *centavos,* which amount was delivered to the defendant, Mr. Enrique Amy y Parreño, in the same manner and under the same legal obligation as applied to the previous inheritance, the properties constituting this inheritance being a certain share in the foundry and iron works before stated, and an amount in cash and another amount in exchange on Geneva; (4) That the aforesaid Mrs. Juana Ramú y Moret died intestate in the town of Guayama on the 25th of February of the year 1890, for which reason her widower, Mr. Enrique Amy y Parreño, began proceedings before the court of first instance for obtaining a declaration of heir and said court rendered a final order on the 4th of July, 1893, declaring as sole heirs of the deceased Mrs. Ramú, her four legitimate children, Mr. Eduardo Enrique, Mrs. Josefina, Mrs. María Dolores Dominga and Mrs. María del Carmen Amy y Ramú, who are the plaintiffs in this action, all of whom by act of the law acquired the properties, rights and actions which belonged to their ancestress

from the very moment of her death, and as a consequence of it, the actions and rights which are derived from the general legal mortgage and the tacit one which is established upon all the properties belonging to the surviving spouse; (5) That the widower, Mr. Enrique Amy y Parreño, was married again to Mrs. Petronila Rocafort in the year 1893, and after this marriage had taken place they acquired several properties with money proceeding from the first conjugal partnership, since in neither of said marriages, and in spite of the industry and endeavors of the defendant, Mr. Amy, was he able to acquire any properties which might have been considered as acquired during marriage; (6) That among the several properties of very small importance, all of which are encumbered by Mr. Amy, there appears at the present time in the registry of property, as the exclusive property of the defendant one described as follows:

·'' 'Estate "Trinidad," consisting of 493 and 63 hundredths of another acre of land equivalent to 194 hectares, 1 are and 63 centiares, situated in the ward of Aguamanil, of this municipal jurisdiction, bounded on the north by a ravine, owned by Mr. Manuel Naveira, Victor and Asunción Torres; on the east by a piece of property which divides the jurisdiction of Patillas, Eugenio Berríos, piece of property dividing the jurisdiction of Arroyo, Succession of Mr. Luis Montrié; on the south by other lands of said Montrié and lands of Lorenzo Ortiz, and on the west by Nemesio Rodríguez, Miguel Cintrón, Isidora Díaz, Dionisio and José María Rodríguez.'

"(7) That this property appears to have been acquired by Mr. Amy by virtue of a public deed executed in Arroyo on the 12th of March, 1895, before the notary of Guayama, Mr. José Mariano Capó y Alvarez, from Mr. Eugenio Marcelino Verges, but it is a fact that this transfer of ownership, as also the one previously made by Mr. Amy of the same property in favor of the same Verges, at a time when his first wife, Mrs. Juana Carlota Ramú y Moret, still lived were simply simulated contracts of a confidential character and they did not evidence more than a simple security ensure to Mr. Verges the collection of a debt owing him from Mr. Amy; (8) That the aforesaid property 'Trinidad,' notwithstanding the simulated transfers to which the previous averments make reference, was always possessed by Mr. Amy as its owner, who administered the same, without interruption of any kind and it must be taken into account that the consideration given by Mr. Amy in the legal acquisition of said property belonged in its entirety to the inherited funds of his wife, Mrs. Juana Carlota Ramú y Moret, which fact was known by Messrs. Amorós Bros., a firm doing business at that time in Guayama, who also knew perfectly

well that Mr. Amy had children from his first marriage to whom he had not rendered any liquidation of the total amount of the existing properties belonging to the conjugal partnership; and in spite of that fact said Amorós Bros. required Mr. Amy to establish a voluntary mortgage upon the aforesaid estate 'Trinidad' in order to secure them the payment of a debt amounting to 12,000 *pesos*, Mexican money, which was contracted some time after the death of his first wife; and said contract of voluntary mortgage was carried into effect by virtue of a public deed executed on the 22d of March, of said year—that is, a few days after the transfer of the property in question was fraudulently made by Mr. Verges to Mr. Amy; (9) That Mr. Enrique Amy y Parreño, about the month of September of the same year, 1895, executed before the notary of Cayey, Mr. Casimiro Morales Beneján, a deed of mortgage bond in favor of his four children of his first marriage to Mrs. Juana Carlota Ramú y Moret, constituting a mortgage in favor of the same on some properties, among others, the estate 'Trinidad,' which has been heretofore described, stipulating, however, that this mortgage was subsidiary to the one which he had already established in favor of Messrs. Amorós Bros., and in such condition was recorded in the Registry of Property of Guayama on the 11th of January, 1896; (10) That the plaintiffs in this action have never by any means transferred, directly or indirectly, in whole or in part, their rights of ownership in the estate 'Trinidad' as it is described. in this complaint nor have they consented either to the deferment of the tacit legal mortgage which is established in favor of their deceased mother to secure the return of the extra *dotal* property, either before or after the declaration of heirs to the estate of their deceased mother, according to the order to which reference has been made in the fourth averment of the complaint; (11) That Mr. Mateo Amorós, as assignee of Messrs. Amorós Bros., has instituted before the District Court of Guayama an executive proceeding in accordance with the procedure required by the Mortgage Law; trying to execute by this means and collect through the sale of the estate 'Trinidad' a credit of $12,000, Mexican money, and interest on the same, with preference to the privileged credit of the plaintiffs in this action, who would be deprived of their preferential right to collect ahead of other creditors if the property should be sold at public auction by Amorós, who is the party requesting the execution of the same, then there would be not be sufficient money to cover the total amount of said privileged credit; (12) That the voluntary mortgage which was constituted by Mr. Enrique Amy y Parreño in so far as the same establishes a preference in favor of Messrs. Amorós Bros., with out the consent of the legiti-

mate representatives of the deceased Mrs. Juana Carlota Ramú y Moret, is entirely null and void as said clause was stipulated in violation of the requirements of the law in force at the time of the first mortgage of Mr. Enrique Amy which recognize and sanction a privileged mortgage in favor of married women in order to secure the restitution of their paraphernal property at any time.

"Wherefore, the plaintiffs pray the court to decree as follows:

"I. That the estate 'Trinidad,' with all its appurtenances, is of the exclusive equal undivided property in common of the plaintiffs in this action, declaring that all the encumbrances constituted upon the property by the defendant, Amy, in favor of any other person, or corporation are null and void, and also declaring null and void all the titles of inscription of said titles in the registry of property, ordering the cancellation of such entries. And in case that the court should not find any reason for the rendition of the aforesaid judgment, to declare: (*a*) That the tacit legal mortgage existing upon the properties of Mr. Enrique Amy y Parreño, and specially the mortgage of that nature which encumbers the estate 'Trinidad,' as it has been described in the complaint and which should secure the devolution in all its parts of the paraphernal property of the deceased Juana Carlota Ramú y Moret is, and the same constitute a preferential and privileged mortgage over all other voluntary mortgages which may have been constituted by Mr. Amy, and specially the mortgage of $12,000, Mexican money, which is now judicially claimed by Mr. Mateo Amorós; (*b*) That the aforesaid mortgage of Mr. Amorós be declared altogether void inasmuch as in such deed it is set forth that the same has preference over the legal mortgage claimed by the plaintiffs in this action; (*c*) That the inscription ordered to be made in the registry in favor of Amorós Bros., and of Mr. Mateo Amorós, be considered as null, ordering its cancellation since it appears recorded in the books of the registry as a first mortgage and that there be also annulled any statement which may have been made in the inscription of the mortgage bond made by Mr. Enrique Amy in favor of the children of his first marriage who are the plaintiffs in this action, in such a manner that said mortgage bond should be deferred to the voluntary mortgage which has been made in favor of Messrs. Amorós Bros. and Mateo Amorós as assign; (*d*) And that the defendant be condemned to the payment of all the costs.

"II. The defendant, Mr. Enrique Amy, did not make any appearance within the legal term to answer the complaint and upon motion of the plaintiffs, he was declared in default on the 19th of November, 1907.

"III. The defendant Mr. Mateo Amorós, filed his answer in due time, alleging: (1) That he admits the first count of the complaint; (2) That in regard to the second paragraph, he admits that Mrs. Juana Carlota Ramú brought to the marriage relation as an inheritance from her father, the sum of 22,162 *pesos* and 95 *centavos*, in several properties or inheritances which consisted principally of a foundry and blacksmith shop in Arroyo, but denies that among such properties there was any amount in cash, according to the best information and belief of this defendant. And he also denies in a specific and absolute manner that said properties, nor any part thereof, were ever expressly delivered by Mrs. Juana Carlota Ramú to her husband, Mr. Enrique Amy y Parreño, with the idea that said Amy should have the control and administration of the same; he also denies that with respect to said property there ever existed or now exists any legal mortgage in favor of the aforesaid lady or her heirs, or that the duty devolved upon Mr. Enrique Amy to secure the return of such property by a mortgage in favor of his wife and children. And as a matter of defense in regard to the second allegation of the complaint, the defendant, Amorós, asserts: That Mrs. Juana Carlota Ramú y Moret, since she received the inheritance from her father, always had by her and for herself the dominion and administration of the properties constituting such inheritance; and in her character of sole administratrix and owner of the same sold them to her brother Luis Ramú being the entire share belonging to her in the iron works and the foundry to which reference has been made in the complaint, by public deed executed before the notary of Guayama, Mr. José Mariano Capó, on the 17th of September, 1885; and the amount of said sale went into the possession and ownership of Mrs. Juana Carlota Ramú, and never in all or in part were such proceeds transferred to the ownership or administration of her husband, Mr. Enrique Amy. (3) He also denies the third allegation of the complaint and asserts as a defense and as new matter, that in the proceedings had in regard to the inheritance of Mrs. María Cleofe Moret, mother of Mrs. Juana Carlota Ramú, there was adjudicated in favor of this last-mentioned lady property consisting of a picture, an old buggy, some cattle, a share in a piece of land, and a share in the iron works and foundry before mentioned; also in mercantile credits, and in a small amount of money in cash; but neither the whole or any part of said properties was ever delivered by Mrs. Juana Carlota Ramú to her husband, Mr. Enrique Amy, in any manner so that he should have control and administration of the same; on the other hand Mrs. Ramú kept and had the control and dominion and administration of said properties as sole owner of the

same; sold them to her brother, Mr. Luis Ramú, freely, and voluntarily, by virtue of a public deed of the 17th of September, 1885, executed before the notary of Guayama, Mr. José Mariano Capó, receiving and keeping for herself, in her capacity of owner and administratrix, the proceeds obtained from the sale. And the defendant, Amorós, denies that Mr. Enrique Amy y Parreño gave any security nor incurred any obligation by virtue of the properties inherited by Mrs. Juana Carlota Ramú from her mother. (4) In regard to the fourth allegation of the complaint this defendant admits the fact relating to the death of Mrs. Juana Carlota Ramú and that of the declaration of heirship *ab intestato* in favor of the plaintiffs; but he denies that either by such acts or by any other, they have any right by any legal and tacit mortgage, imposed on the properties of Mr. Enrique Amy, by reason of paraphernal properties of Mrs. Juana Carlota Ramú; and he denies, as aforesaid, the existence of any legal mortgage for such a cause. (5) In regard to the fifth allegation of the complaint this defendant admits that Mr. Enrique Amy contracted a second marriage with Mrs. Petronila Rocafort in the year 1893, but denies, according to his best information and belief that the property was acquired by Mr. Amy in the second marriage partnership. (6) In reference to the sixth allegation of the complaint this defendant admits the existence of the estate 'Trinidad' and the fact of the same appearing at the present time recorded in the registry of property as it has been described in said allegation; and admits likewise that said property was acquired by Mr. Amy by virtue of purchase from Mr. Eugenio Marcelino Verges in the date mentioned in the seventh allegation of the complaint. (7) As to the seventh allegation, this defendant admits that the estate referred to was acquired by Mr. Enrique Amy y Parreño by purchase from Mr. Eugenio Marcelino Verges according to a public deed which was executed before the notary of Guayama, Mr. José Mariano Capó; but he denies that either this sale or the one previously made of the same property to Mr. Verges, were simulated contracts or of mere security and confidence; but on the contrary, he asserts that such deeds of sale were real and true contracts of transfers of ownership and that in them no condition limiting, modifying the dominion of the person acquiring was shown; and that in said deeds all the formalities and requirements of the Civil Law and the Notarial Law were observed and complied with in order that the same might be considered as a complete manifestation of the intent for which the contract of sale was executed. And, as such contracts of sale, were recorded in the registry of property, such inscriptions never having been attacked by anybody. (8) This defendant

also denies the eighth allegation of the complaint as he considers uncertain the facts therein stated; and specifically denies and in an absolute manner that the firm Amorós Bros. had ever had any knowledge that Mr. Amy had failed to make any liquidation of the property left at the conclusion of his first marriage relation which circumstance did not affect in any way nor could it affect, the relation of the transaction which took place between Mr. Amy and the firm, Amorós Bros. This defendant admits the date of the voluntary deed of mortgage of which the eighth allegation speaks, and of the debt of $12,000, Mexican money, which debt Mr. Amy had pending with said firm Amorós Bros., which was contracted after the death of his first wife. In opposition to this allegation and as a new matter of defense, this defendant alleges that the estate 'Trinidad' was acquired during the second marriage of Mr. Enrique Amy, and with funds and in the character of property belonging to this second marriage, which fact the defendant alleges according to his best information and belief. Also, he opposes and asserts as new matter of defense, that Mr. Enrique Amy y Parreño had received from the firm Amorós Bros. up to the 22d of March, 1895, the amount of $12,000, current money, as a loan, he obligating himself to return to said firm the said amount; and in order to satisfy this debt Mr. Amy also agreed on the same date with the firm Amorós Bros. to pay them and return them the aforesaid amount of 12,000 *pesos* which he owed them, in four equal installments during the term of one year, the last installment becoming due on the 28th of March, 1899; the said Mr. Amy binding himself to pay the interest of 10 per cent annually on said amounts. In order to guaranty said indebtedness and interest Mr. Amy constituted a voluntary mortgage upon the aforesaid estate 'Trinidad' which property was free from encumbrance and from any implied or expressed lien. And such obligations and mortgage were made to appear in a public deed which was executed before the notary of Guayama, Mr. José Mariano Capó, on the 22d of March, 1895, and was duly recorded in the Registry of Property of Guayama, the mortgage appearing as a first lien and only encumbrance which bore on the estate 'Trinidad.' And neither said deed nor the inscription of the same in the registry suffers from any vice or legal defect, and they have always been respected and never have they been opposed or attacked by anybody. (9) This defendant admits the ninth allegation of the complaint and the existence and the date of the mortgage bond which was constituted by Mr. Enrique Amy in favor of his children; and the defendants assert that such a bond did not prejudice in any manner, nor could the same prejudice the previous mortgage right of the firm Amorós Bros.

upon the estate 'Trinidad,' and also asserts in opposition that neither Mr. Amy nor his children ever attacked this mortgage bond or the inscription of the same in the Registry of Property of Guayama (on the 11th of January, 1896). And as a defense and new matter the defendant, Amorós, alleges that the deed to which this allegation refers was executed only by Mr. Enrique Amy y Parreño on the 24th of September, 1895, wherein appeared as properties of the ownership of the party executing the deed those properties which were acquired during the marriage relation with his second wife, Mrs. Petronila Rocafort, said lady having no intervention of any kind either directly nor indirectly in said deed. (10) The defendant denies also the 10th allegation of the complaint since the plaintiffs now could not have made any occasion or transfer of any kind on the estate 'Trinidad,' inasmuch as they did not have any right or participation in the same, neither expressed nor implied, in favor of the plaintiffs in this action. (11) In regard to the 11th allegation of the complaint the defendant admits that in his character of assignee of Amorós Bros. that he has instituted and maintains a summary mortgage proceeding for the collection of his mortgage credit before stated against the estate 'Trinidad,' and he denies all the other parts of this paragraph. (12) He also specifically denies the 12th allegation of the complaint objecting to the same because it infers a conclusion of law, and reserving his right to ask in due time that said conclusion be stricken out. The defendant, Amorós, also files his crossbill against the plaintiffs and makes the following allegations: First, Because prior to the inscription of this complaint the plaintiffs in this action have instituted and maintained against Mr. Mateo Amorós and Mr. Enrique Amy, and before the District Court of Guayama, another suit containing allegations and petitions analogous to those which have been made in this suit, and the court rendered therein the corresponding judgment of dismissal. And in that case the plaintiffs obtained from the court a writ of injunction, by virtue of which the summary mortgage proceeding instituted by Mr. Mateo Amorós for the collection of a mortgage credit upon the estate 'Trindad' was stayed. Second, That the plaintiffs have caused great damage to Mr. Mateo Amorós, by reason of the complaint which was dismissed and of the injunction issued, for which damages they have not been indemnified and which amount to not less than $3,000. Third, That likewise and by virtue of such a suit and of the injunction, the plaintiffs in this action have wilfully prevented the defendant, Mateo Amorós, who was a creditor in that summary proceeding, from executing the estate 'Trinidad' in his favor making valid the rights which he had in such property on account

of the mortgage, receiving therefor the fruits and products of said estate; they having occasioned to Amorós damage which may be estimated in not less than $2,000.

"In view of the foregoing allegations the defendant Mateo Amorós requests the court to please render a judgment dismissing the complaint and all the petitions therein made and admitting the crossbill; also that the mortgage that encumbers the estate 'Trinidad,' which was constituted by Mr. Enrique Amy y Parreño in favor of Amorós Bros., by deed of the 22d of March, 1895, before the notary, Capó, and which property now belongs to the defendant, Mateo Amorós y Alsina, in the amount of 12,000 *pesos* and interest at the rate of 10 per cent per annum and costs be declared perfectly valid in law and a first and a preferred lien upon the estate 'Trinidad'; and that plaintiffs must and should be condemned to pay to Mateo Amorós y Alsina the amount of $5,000 for damages caused him by the acts referred to in the crossbill; and that the costs be imposed upon them.

"IV. During the trial of the case the plaintiffs presented in evidence a private document marked with the letter 'A,' and signed by E. M. Verges, whose signature was duly acknowledged by such subscribing witness, which document literally says: 'To my testamentary administrators: Be it known by these presents that the purpose which I entertained in making an agreement with my brother's brother-in-law, Mr. Enrique Amy, by means of which a piece of real estate situated in the ward of Aguamanil, of the jurisdiction of Guayama has become my property, the description of which appears in the deed of sale which was executed on the 30th of June last, before the notary of Guayama, Mr. José Mariano Capó, to which document that was duly recorded in the branch office of that district I make reference, and I declare that it is my expressed will that in the event my death should occur before I am able to have all my business definitely arranged with my brother's brother-in-law, Mr. Amy, and provided that it be convenient to my sister-in-law, Mrs. Juana Carlota Ramú de Amy, shall acquire for her or for her children the property aforesaid. That my testamentary executors or administrators are empowered to segregate the property referred to situated in Aguamanil from my other properties, transferring the title of ownership to the aforesaid Mrs. Juana Carlota Ramú de Amy or her children, if so it is preferred, and accepting as total payment and price of said property, to give to my succession, in cash or its equivalent, and to the satisfaction of my testamentary executors, the amount which at that time was due me by her husband, Mr. Enrique Amy, the owners having to pay the expenses caused by the execution of the deed and other documents

relating to the transfer of the titles of ownership; making a gift to her of all excess in value whatever it may be, between the actual value of the property and the amount of said debt. In testimony whereof, I have signed this at Maunabo, on the 12th day of August, 1886. E. M. Verges.'

"Another private document was thus introduced by the plaintiffs marked with letter 'B,' and signed by E. M. Verges and Enrique Amy, which had been previously acknowledged by both parties, and reads as follows:

" 'In Arroyo on the 12th of March of the year eighteen hundred and ninety-five, there appeared Mr. E. Amy and Mr. E. Verges, and stated that the former in representation of his children surnamed Amy Ramú, transfers to the latter a property inherited from their mother, which was acquired from among the properties of their deceased great grandfather, Mr. Simón Moret, and which consisted in a property known as Adela, situated in the ward of Jobos of Guayama, and 43 *cuerdas* of land acquired by purchase from Mr. Luis Ramú, and state further: That the latter sells to the former a coffee plantation situated in Aguamanil, and known as "Trinidad," for the sum of 30,000 *pesos*. The undersigned wish to make it known for the satisfaction of their children or whoever it may concern now or at any time hereafter that the amounts included in the deeds which are being drawn to-day, as aforesaid, either in reference to one of the properties as well as to the other are simply nominal and suppositious, the fact of the matter being that a friendly arrangement is made for the payment of the $6,667.86, of current money, which amount was indebted by Mr. Amy to Mr. Verges, and is the liquidated amount of his pending accounts, without interest of any kind on the properties and including the sum mentioned; Mr. Amy having to arrange matters with his children for the legal transfer to them of the property. In the aforesaid settlement no cash was passed from one of the signers to the other. E. M. Verges. Enrique Amy.'

"The plaintiffs also introduced under letter 'C' a copy of the deed executed before the notary of the city of Guayama. Mr. José Mariano Capó, on the 1st of February, 1874, with respect to the liquidation and distribution of the property of Mrs. María Cleofe Moret de Ramú, wherein the whole share adjudged to the heir Mrs. Juana Carlota Ramú amounts to $15,825.64. Likewise under letter 'D' there was presented a copy of a deed executed by Mr. Enrique Amy y Parreño setting forth a mortgage bond and the possession of an inheritance in favor of his minor children, Mr. Eduardo Enrique, Mrs. Josefina, Mrs. Dolores and Mrs. María del Carmen Amy y Ramú, in Guayama, be-

fore the notary, Mr. Casimiro Morales, as substitute of Mr. Capó, on the 24th of September, 1895, in which deed, there appeared, among others, the following clause:

" 'Third. That the first wife of the party appearing in this act, Mrs. Juana Carlota Ramú y Moret, who died in this city on the 25th of February, 1890, inherited from her father, Mr. Juan Luis Ramú, property which amounted to 22,162 *pesos* and 95 *centavos,* of current money; from her mother, Mrs. María Dolores Cleofe y Moret y Calendrau, 15,825 *pesos* and 64 *centavos* of the same medium; and from her grandfather, Mr. Simón Moret y Boucher, 6,264 *pesos* and 98 *centavos* of the same money, as it appears in the respective probate proceeding which said three items amount to 44,263 *pesos* 57 *centavos* of the money in circulation, which amount was under the control and administration of the party appearing herein as husband of the aforesaid Mrs. Juana Carlota Ramú y Moret, and which at present belong exclusively to the children of Mrs. Carlota Ramú and the parties executing this deed, Mr. Eduardo Enrique, Mrs. Josefina, Mrs. María Dolores Dominga and Mrs. María del Carmen Amy y Ramú, who have been adjudged heirs of the aforesaid by order of the court of first instance of this district, on the 4th of July of the year 1893, a copy of the same having been examined in this act.'

"As a consequence of this declaration the party executing this deed, Mr. Amy, acknowledges the indebtedness of the aforesaid sums to his children, binding himself to give said amounts to them when they reach an age or acquire legal capacity to receive the same; and in order to guaranty this obligation he constitutes a mortgage in favor of said children by fourth parts on several properties which are described under the same title, among which appears the one known as 'Trinidad,' it being stipulated to that effect the following:

" 'Fourth. It is understood that the mortgage herein constituted will not prejudice the others referred to established in favor of Messrs. Amorós Bros., Mr. Cayetano Julbe y Masnati and Mrs. Carmen Casablanca y Martínez imposed upon the first, second and third of the aforesaid properties in this deed; but as soon as these obligations are complied with said three properties shall remain, as well as the others mentioned, specially subject as security for the shares of the respective minor children of Mrs. Juana Carlota Ramú y Moret. Thus the plaintiffs introduced in evidence some testimony to show that the defendant, Mr. Amy, possessed and administered the properties which had been brought by his first wife to the marriage relation and had acquired them by inheritance from her parents.

"V. The defendant Mr. Amorós introduced as documentary evidence: (*a*) Copy of a deed of purchase and sale of hereditary partition which was executed by Mrs. Juana Carlota Ramú y Moret in favor of Mr. Luis Ramú y Moret before the notary, Mr. Capó, in Guayama on the 17th of September, 1885, which document has, among other recitals, the following: 'Of which total amount of $10,000, current medium, Mrs. Juana Carlota Ramú y Moret de Amy stated that she had received, prior to this act, the $5,000 which belonged to her as her share in the real and personal property which constitute the foundry, the boundaries of which have been given; (*b*) A copy of the deed of manifestation of heritable properties and bond executed by Mr. Enrique Amy on the 4th of September, 1895, and which is identical to that presented by the plaintiffs; (*c*) A certificate of the Registrar of Property of Guayama, original of the inscription of the estate "Trinidad" made in favor of Mr. Enrique Amy and the voluntary mortgage imposed upon the same property in favor of Messrs. Amorós Bros., which was executed by Mr. Enrique Amy y Parreño for the amount of $12,000, current money, according to a deed executed in Guayama before the notary, Mr. Capó, on the 22d of March, 1895. The defendant also offered in evidence the original records which appear in this court in reference to the civil case No. 375, that was brought by the plaintiffs against said defendants on the same matter and dismissed by the plaintiffs; and also the civil records in case No. 369, for an injunction which was sought by the plaintiffs against the defendants, which injunction was dissolved by this court in a decision affirming the judgment of the court below rendered by the Honorable Supreme Court of this Island. Finally, the defendant presents oral testimony purporting to establish the proceeds of the property involved in this suit.

"VI. Plaintiffs request in the first place that it be declared that the 'ownership and dominion' of the estate 'Trinidad' and all its appurtenances, belong in undivided shares to the said plaintiffs, and they base their petition in the alleged simulation of the contracts of sale which were executed by Amy to Verges in 1886, and from the latter to the former on the 12th of March, 1895. The evidence presented in support of said simulation are some private documents, executed at such dates, and the depositions of several witnesses, among whom those of Messrs. Verges and Amy, purporting to show that said estate was always in possession of Mr. Amy, the defendant. These private documents do not deny either in their letter or spirit, the existence and reality of the transfers made by deed and only make clear what refers to price and value assigned to said property; but

even conceding to this evidence and the statements of the witnesses all the probatory force given them by the plaintiffs we would reach the conclusion that said contracts have other valuable and sufficient consideration for their support according to the proof itself and therefore said deeds of transfer do not suffer from the alleged ground of nullity, according to article 1243 of the Civil Code (1276 of the old); according to what has been decided by the Supreme Court of Spain in construing this section, in its judgment of the 14th of March, 1891, wherein it is stated:

" 'The mere fact of the expression of an inaccurate and false consideration made by the parties upon the execution of the contract does not invalidate the same, whenever it appears to have been based in another, which, although different from the one expressed may be actual and lawful; for in such case the lack of consideration being only apparent, the obligations contracted by the interested parties with full knowledge may be valid.'

"Pushing the argument to its ultimate conclusion and accepting the hypothesis of simulation or nullity of the deeds referred to, such transfer would be ineffective and the former title would be valid in the name of the defendant Mr. Enrique Amy y Parreño; but the ineffectiveness or nullity of the transfers would by no means *ipso facto* create a title of dominion in favor of the plaintiffs, children of the former owner. And the plaintiffs could not, in the latter case, be considered as owners, not even supposing that it had been proven that the property in question belonged in whole or in part to their deceased mother the former wife of the defendant Mr. Amy; for, even admitting this, the liquidation of the conjugal partnership was a necessary requirement and also the corresponding adjudication of the whole or a part of said property to said defendants as payment of their shares; when that liquidation shall be made and the adjudication carried on, then it will be that the plaintiffs will legally be called owners of the property and exercise the action of recovery of property which is sought for herein without any title of any kind.

"The action for recovery can only be prosecuted by the owner as an effective means to recover the thing which lawfully belongs to him; and the very nature of this action requires necessarily: (*a*) That the petitioner and no other person be the legitimate owner of the thing sought for to be recovered (dominion right); (*b*) That the thing claimed and no other be the one belonging to him (identity of the thing); and (*c*) That said thing be unduly found in possession of the defendant (possession of the thing). Such doctrine is the one

found in the law 29, title two, *partida* three; *ley* 4, title three, *lib.* XI Nov. Rec.; section 348, Civil Code of Spain, equivalent to 354 of Porto Rico; and upheld by the Supreme Court of Spain in numerous decisions, among others which may be cited, the following:

" 'The action for the recovery of property arising from mere ownership can be resorted to by him who has it and can legally prove it. Judgment of the 14th of March, 12th of April, 9th of May, 1862, 5th of February, 1863; 13th of February of 1864. In order successfully to exercise the action for the recovery of property it is necessary that the dominion of the property claimed be justified in favor of the claimant. (Judgments of 23d of May, 1862, 3d of January, 1863, 4th of February, 1865.) In order to resort to the action of recovery the existence of a title on the thing sought to be recovered is necessarily required. (Judgment of the 3d of July, 1872.) '

"The judgment of the 27th of May, 1905 is a case that bears some resemblance to the case at bar and states the following:

" 'The action for recovery having been based on the nullity of the contract of sale of the property with respect to the recovery of half of the property, this half as belonging to the complainants is in fact community property and proceeding from Da. A. V., the fundamental question of the suit and now of the appeal is limited to the question whether the appellants have duly proved their ownership to the thing claimed which was incumbent upon them to prove; and thus is absolutely indispensable in order that the action for revindication may succeed.'

"The same doctrine of the law and the jurisprudence of Spain and Porto Rico is the one supported by the law and jurisprudence of the United States wherein it is declared:

" 'The real plaintiff must recover on the strength of his own title and cannot rely on the weakness of the defendants. (East, 246; ·2 S. & R., 65; 4 Halst, 149; etc., etc.) Plaintiff's title must be strictly legal and not equitable. (24 L. R. A., 25; 11 L. R. A., 781.) Plaintiff must shown title or right of possession in himself before he can disturb defendant's possession. (58 L. R. A., 199.) '

"If we examine this question under another viewpoint we cannot overlook the fact that the defendant, Mr. Amy Parreño, shows a recorded title of dominion on the farm, the recovery of which is sought and the title of the defendant and the alleged right of dominion which the plaintiffs allege being incompatible and contradictory it is logic that one cannot prevail without the previous declaration of the nullity of the other. If defendant shows a title recorded which protects him

in the possession of the thing claimed, it is necessary to aver, prove and declare that said title and inscription suffer from a vice of nullity; and until such nullity is declared by a final order it will be legally impossible to declare or admit the rights of the plaintiffs to the same thing. To this end may be cited several decisions of the Supreme Court of Spain, and among others the following:

"The action for the recovery of property which belongs to the owner of a thing, is effective and direct against any possessor of the same thing, who possesses it without title therefor; but it is not effective nor can the same be established fruitfully when the possessor has a title more or less valid, unless previous to said action there should be another to invalidate the same according to law. (Judgt. of the 10th Dic., 1864.) Every possessor should be respected in his possession from which he cannot be deprived without trial and judgment rendered against him, and the nullity of the title or contract by virtue of which he is in possession previously been declared. (Judgt. 19 April, 1905.)

"VII. In the second place and as a subsidiary prayer to the one already mentioned of recovery the plaintiffs request that the general tacit mortgage encumbering the property of the defendant, Mr. Enrique Amy y Parreño, and specially the one encumbering the estate 'Trinidad,' be declared as a privileged mortgage and prior to all other voluntary mortgages established by said defendant upon the said property, and specially upon the one of 12,000 *pesos*, Mexican money, claimed by Mr. Mateo Amorós.

"In order to decide this question it is necessary to decide first whether or not the legal mortgage upon which the plaintiffs base their petition exists and to this effect we must consider that according to the definition of the law 17, title 11, *partida* four, 'the property which a married woman acquires by inheritance and all those whose *dotal* character does not appear, necessarily enter into the kind of extra *dotal* or paraphernal property' and therefore those which the deceased Mrs. Juana Carlota Ramú, first wife of the defendant, Mr. Amy Parreño, and mother of the plaintiffs Amy, acquired by inheritance of her parents merit such characterization.

"In regard to this point the evidence introduced of the paternal inheritance which is said to have been acquired in the year 1863, has been defective, inasmuch as only a reference to the amount was made in the deed of declaration of properties which was executed by the defendant, Amy, in the year 1895, but no proof has been introduced to justify the nature of the property composing said inheritance.

nor even to demonstrate that such inheritable properties from the father's side were brought to her marriage with the defendant.

"There has only been proved by an authentic document the acquisition of the maternal inheritance, which was liquidated in the year 1874, after the marriage of Mrs. Ramú with the defendant, Mr. Amy. But even if we disregard the evidence concerning the paternal inheritance we can consider as justified the existence of the paraphernal property in so far as the same refers to the maternal inheritance.

"And whatever may be its importance it is certain that there may be applied to the same the aforesaid law 17, title 11, *partida* four, wherein it is prescribed that the paraphernal property has the same privilege as the dowry because in the same manner as all the properties belonging to the husband are bound to the wife, if the husband sells or wastes the dowry, and the same thing applies to the paraphernal property; and likewise are applicable the laws 23 and 33, title 13, *partida* five, which refer to the privileges enjoyed by the wife upon her husband's property on account of the dowry.

"But the mere existence of paraphernal properties does not imply *ipso facto* the responsibility of the husband's property, but it is necessary that certain requirements be fulfilled in order to create or make at the proper time such a liability; and these requirements are determined in an expressed manner by the aforesaid law 17, title 11, *partida* four, which prescribes the following:

"'And there are all those things which in Greek are called paraphernal if the wife gives them to the husband with the intention that he shall exercise dominion over them during the marriage which he holds in the same way as those given as a dowry. And if she should not expressly give them to her husband and it was not her intention that he should control them, then she is considered the owner of the same. And the same thing would be true if there should be doubt as to whether the property had or had not been given to the husband.'

"The liability of the husband for the paraphernal property undoubtedly arises at the moment of the delivery of said paraphernal property according to the manner prescribed by the law; and it being fixed in the case at bar that the date of the delivery was the year 1874, the same should be governed by the laws in force at that time which were the aforesaid *Leyes de Partida y Novísima Recopilación*.

"The general rule established by those laws and by the jurisprudence of Spain declare that the ownership and administration of the paraphernal property belong to the wife, and only as an exception are they transferred to the husband in administration and when in

an express manner and authentic form the same are delivered to him by the wife, and only in case of such delivery does the husband get control and incur the obligation, and the legal mortgage arises in favor of the wife. In accordance with this principle it is declared in the judgment of the 28th of March 1874, that: 'That the paraphernal properties only have the privilege of the dowry when the trial court considered that the wife had given them to the husband "in an express manner, and with the intention that he should have the control of the same.'

"The same principle is laid down in the judgment of the 23d of May and 21st of October, 1864; 27th of November, 1865 and 8th of April, 1884, wherein it is declared: 'That in order that the control of the paraphernal property belonging to the wife may be transferred during the marriage to the husband and therefore he be affected with the liability which the *"Leyes de Partida"* impose upon those properties, it is indispensable to show that the wife delivered them in an express manner and with the intention that he should possess them and administer them as *dotal* property and on the other hand the case of its being doubtful whether she delivered them or not, the wife always retains the dominion of them.'

"The evidence introduced by the plaintiffs does not justify in any manner that the paraphernal property of their deceased mother, Mrs. Juana Carlota Ramú, was expressly delivered and in an authentic manner to her husband the defendant, Mr. Amy, with the intention that he should administer and have control of the same, and for this purpose the statement of witnesses cannot be considered as material who only assert in a vague manner and in general terms that the defendant Mr. Amy represented and administered the property belonging to his wife which had been delivered to him by virtue of an agreement made in the family without specifying in what said property consisted, or when, at what time or in what manner the special delivery required by the law was made him. For this purpose we cannot weigh or give any force to the statement of the defendant, Mr. Amy, nor to the confession contained in the deed of the 26th of September, 1895, because aside from other considerations there exist conclusive and express jurisprudence to the effect that the confession of the husband of having received the paraphernal property is not sufficient proof of the delivery of the said property. (Judgment of the Supreme Court of Spain of the 28th of June, 1890.) And the same principle is held in a more concrete manner in the judgment of the 11th of July, 1895, by the same court.

"Neither can it be considered that the liability of the defendant, Amy, arises when the wife transferred the whole or part of her paraphernal property to Mr. Luis Ramú by deed of the 17th September, 1885, because in the same document the vendor appears and declares in an express manner that she had received the amount of the sale of said property and for it she gave a receipt; without it appearing in any manner that her husband, Mr. Amy, received and appropriated the amount of the sale. To this end are applicable the judgments of the Supreme Court of Spain of the 22d of October, 1857, and 6th of July, 1872, wherein it is declared:

" 'That the property of the husband becomes bound for the value of the paraphernal or extra *dotal* property when these are sold with the consent of both husband and wife and the proceeds come into his possession. If it should not appear that the proceeds of the paraphernal property came into his possession his property is not bound and therefore no legal mortgage arises.'

"For these reasons we conclude that in this case the legal mortgage invoked by the plaintiffs on the property of their father the defendant Mr. Amy y Parreño and specially on the aforesaid estate 'Trinidad' has not been shown and does not exist.

"VIII. There not appearing any tacit mortgage constituted by law upon the property of the defendant, Mr. Amy, in favor of his children, plaintiffs herein, the same cannot be considered other than a mere voluntary mortgage subject to the obligation established by Mr. Amy by deed of the 24th of September, 1895, and inasmuch as such voluntary mortgage has to be governed by the general requirements of sections 105 and 137 and the special ones of sections 138 and 156 of the Mortgage Law even though the contracting parties may have sought to name it 'legal mortgage,' because the characterization that the interested parties arbitrarily adopt in a contract does not change nor modify its legal nature.

"It has been justified by the documentary evidence that the time this mortgage was established in favor of the plaintiffs, Mr. Amy had already executed and duly recorded the other voluntary mortgage (now attacked), on the estate 'Trinidad' in favor of Messrs. Amorós Bros., according to a deed of the 22d of March of the same year, 1895, and as a consequence of what had been expressly required by number four of section 106 of the Mortgage Law, the second mortgage was postponed to the former not by the declaration or consent of the parties but by the express mandate of the law. Under these circumstances no reason or legal ground in order to consider said former mortgage as postponed or subject to the second can be invoked and

thus arbitrarily invert the order of preference already established by law.

''The same legal grounds can be averred against the alleged nullity of the first mortgage and in it there also should be taken into account the precepts of sections 36 and 38, No. 7 of the Mortgage Law, inasmuch as the defendant, Mr. Amorós, and his assigns have in any event the legal relation of third parties with regard to the plaintiffs, Messrs. Amy, in so far as reference is made to the alleged legal mortgage. But as this legal mortgage does not exist there remains nothing upon which to base the alleged nullity of the voluntary mortgage.''

This complaint has two inconsistent aspects. It is an action for revindication or to declare a legal tacit mortgage on the same property. Of course if the property should belong to the complainants they would not be entitled to have an encumbrance declared on the same property and vice versa. With respect to the action for revindication we agree with the trial court that no fraud was shown either in the deed from Amy to Verges or from Verges to Amy. The fact that the consideration was incorrectly stated makes no difference as there was a valuable consideration for the transfer consisting in the debt which Amy owed Verges. Mrs. Carlota Ramú joined in the deed and we do not see how her heirs can be heard to assert that a fraudulent act on her part can redound to their advantage. Amy who was a witness of the complainants himself testified that when the conveyance was made to him from Verges he thought he would be able to arrange everything with his creditors (statement p. 29), and it is idle for appellees to suggest that he was attempting to defraud his own children. There is no evidence of fraud in this case. Everyone was apparently acting in good faith.

We also agree with the court below in what it cites as to the prerequisites for the action of revindication and likewise that if the deeds between Amy and Verges should be declared void an action of revindication would not lie until there had been a liquidation of the conjugal society existing between Amy and Juana Carlota Ramú.

The question of whether the plaintiffs must first bring an action for nullity is not so clear because of the provisions of the present code of Civil Procedure. The decision of this court in the case of *Sucesión de Ciprián Blondet* v. *Fantauzzi Hermanos,* of 11th of April, 1908, 14 P. R. Rep., 302, tends to support the view of the court below, but it is nevertheless possible that one action might be brought both to declare the nullity and for revindication. It is unnecessary to decide the question because the complaint does not ask that these deeds be annulled and without the previous annulment no action or revindication lies.

We come then to the principal matter raised by this appeal, namely, whether a tacit legal mortgage was created against the property "Trinidad" in the hands of Mr. Amy and whether such alleged tacit legal mortgage could take precedence of the voluntary mortgage created by Amy in favor of Mateo Amorós who alleges that he is an innocent purchaser for value without notice or what is known in the mortgage law as a third person. We are entirely in accord with the court when it says:

"The evidence introduced by the plaintiffs does not justify in any manner that the paraphernal property of their deceased mother, Mrs. Juana Carlota Ramú, was expressly delivered and in an authentic manner to her husband the defendant, Mr. Amy, with the intention that he should administer and have the control of the same, and for this purpose the statement of witnesses cannot be considered as material who only assert in a vague manner and in general terms that the defendant, Mr. Amy, represented and administered the property belonging to his wife which had been delivered to him by virtue of an agreement made in the family without specifying in what said property consisted, or when, at what time or in what manner the special delivery required by the law was made him. For this purpose we cannot weigh or give any force to the statement of the defendant, Mr. Amy, nor to the confession contained in the deed of the 26th of September, 1895, because aside from other considerations there exist conclusive and express jurisprudence to the effect that the confession of the husband, of having received the paraphernal property, is not sufficient

proof of the delivery of the said property. ' (Judgment of the Supreme Court of Spain of the 28th of June, 1890.) And the same principle is held in a more concrete manner in the judgment of the 11th of July, 1895, by the same court.

"Neither can it be considered that the liability of the defendant, Amy, arises when the wife transferred the whole or part of her paraphernal property to Mr. Luis Ramú by deed of the 17th of September, 1855, because in the same document the vendor appears and declares in an express manner that she had received the amount of the sale of said property and for it she gave a receipt without it appearing in any manner that her husband, Mr. Amy, received and appropriated the amount of the sale. To this end are applicable the judgments of the Supreme Court of Spain of the 22d of October, 1857, and the 6th of July, 1872, wherein it is declared: 'That the property of the husband becomes bound for the value of the paraphernal or extra *dotal* property when these are sold with the consent of both husband and wife and the proceeds come into his possession. If it should not appear that the proceeds of the paraphernal property came into his possession his property is not bound and therefore no legal mortgage arises.' "

And we think the citations of the jurisprudence of the Supreme Court of Spain are applicable to the case at bar.

There was no express delivery of any particular property shown. This would likewise be true if certain excluded evidence had been admitted. The first paper rejected by the court merely showing that Amy was administering or acting as agent for his wife with respect to the transfer of a bill of exchange does not prove an express delivery. The second paper rejected likewise only shows that Amy was possibly administering or acting as agent for his wife in respect to certain properties, but it is not clear whether he was acting alone or in conjunction with Verges or Ramú. Indeed, Amy says the property belonging to his wife, situated in Europe, as administered by him and Verges jointly, leaving it very dubious whether he ever had the dominion over any part of her property, namely, the "seignorio," to which the laws of *partida* relate.

Even if, as against the property of Amy in general, there existed a tacit legal mortgage, we do not see anything in the

record to deprive Mateo Amorós of his capacity (with respect to the estate "Trinidad"), as a third person under the provisions of the mortgage law. Appellant complains of the rejection of certain evidence which showed that the firm of Amorós Hermanos of whom Mateo Amorós was the managing partner had an account with the succession of Carlota Ramú de Amy. That Mateo Amorós had any presonal knowledge of this bit of bookkeeping was not proved. We cannot presume such knowledge without some proof of the manner of keeping the books of Amorós Hermanos or that Mateo Amorós had something to do with the entries. We agree, moreover, with the court below that the books themselves, and not an extract, would have been the best evidence. We have seen, however, in the case of *Díaz & Pardo* v. *Guillermety,* decision of this court of December 10, 1908, 14 P. R. Rep., 803, that the way an account is entered is not conclusive of the existence of a particular person or society. It might very well be that the account was opened in the manner it was by mistake, especially as it is asserted that there was no proof of the liquidation of the conjugal society. We agree furthermore with the Supreme Court of Spain when it says in its judgment of the 29th of September, 1897, that:

"Concluding that although the meaning and spirit of section 34 of the Mortgage Law is not so absolute as to authorize us in accordance with the repeated jurisprudence of this Supreme Court, to consider as a third party the person who acquires a real property knowing the charges by which it is encumbered, although said charges may not appear in the register, because, supposing this to be the case, then the legal ground and reason is lacking for attributing to such knowledge the said legal transcendency without destroying the force of the definite provision of the Mortgage Law; it is necessary that such knowledge reveal itself by the personal acts of the party acquiring said real property by facts the significance of which cannot be mistaken and which demonstrate his assent."

Even if Mateo Amorós knew of the existence of the first marriage of Amy, that fact alone could not deprive him of his

capacity as a third person when the property on which he accepted a mortgage appeared in the books of the registry as acquired by Amy during his second marriage and, going back a little further, that the same property was conveyed by him to Verges with the consent of Mrs. Juana Carlota Ramú, the ancestor of the complainants. Amy having defaulted, this suit is principally directed against Mateo Amorós. And as he was a third person the ruling of the court below excluding the evidence which attempted to show that Amy was administering his wife's property, were properly made, because as to him such evidence was irrelevant and immaterial.

We advert to the fact that the appellants fail to insert in the statement of the case the documentary proof which defendants offered in evidence and which we have not discussed. It is true that they are put in the record joined to the judgment roll but we have decided in several cases that such addition is insufficient. We find that the opinion of the court below was well considered and finding no error in the judgment the same must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Figueras and Mac-Leary concurred.

Mr. Justice del Toro did not sit at the hearing of this case.